UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

SADIE LIVINGSTON,

    Plaintiff,

v.

SAFEWAY INSURANCE COMPANY,

    Defendant.

Case No. 17-CV-581-SWS-MLC

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

    Plaintiff Sadie Livingston has insured multiple vehicles with Defendant Safeway Insurance Company since 2013. In December 2016, she was involved in a motor vehicle collision with an uninsured motorist and submitted a claim to Safeway for uninsured motorist/underinsured motorist (UM/UIM) coverage benefits, but Safeway denied payment because Ms. Livingston rejected and never paid for UM/UIM coverage. She seeks summary judgment, arguing the form Safeway used to offer UM/UIM coverage did not present a meaningful offer and her policy should be reformed to retroactively provide such coverage equal to her liability coverage limits. Safeway requests its own summary judgment, contending its offer of UM/UIM coverage properly allowed Ms. Livingston to make an informed decision, and she chose to forego such coverage. The Court determines Safeway's motion should be granted and Ms. Livingston's motion denied.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence and the reasonable inferences drawn therefrom against the moving party. *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017)

## ANALYSIS

The operative facts are not in dispute. Accordingly, the matter comes down to whether either party is entitled to judgment as a matter of law.

**1.  New Mexico statutes and case law work together to govern UM/UIM insurance coverage.**

NMSA 1978 § 66-5-301(A) provides that no motor vehicle liability insurance policy may be issued unless that policy also provides UM/UIM coverage. Subsection (A) also sets the minimum UM/UIM coverage limits "for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978." Subsection (B) says uninsured motorist coverage must include underinsured motorist coverage. Finally, Subsection (C) gives the insured "the right to reject uninsured motorist coverage as described in Subsections A and B of this section."

> Insurers have statutory obligations to offer UM/UIM coverage up to the liability limits of the policy, *see Weed Warrior*, 2010–NMSC–050, ¶ 14, 149 N.M. 157, 245 P.3d 1209, and to obtain a valid rejection before

> excluding UM/UIM coverage from the policy, *see Marckstadt*, 2010–NMSC–001, ¶ 16, 147 N.M. 678, 228 P.3d 462.  If an insurer does not (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits.

*Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 22, 149 N.M. 162, 245 P.3d 1214.

## 2.     **Ms. Livingston contends Safeway's UM/UIM Coverage Selection/Rejection Form unfairly forced her to reject all UM/UIM coverage.**

Ms. Livingston's liability coverage corresponded to the minimum amounts permitted by Section 66-5-215:  $25,000 per person/$50,000 per accident for bodily injury and $10,000 for property damage.  Consequently, the most and the least UM/UIM coverage Safeway could (and did) offer her were the same.  (ECF No. 15-1.)

Ms. Livingston's argument centers on whether the form on which she denied UM/UIM coverage allowed her to make a knowing and intelligent decision.  *See Jordan*, 2010-NMSC-051, ¶ 20 ("an insured's decision to reject UM/UIM coverage must be knowing and intelligent in order to effectuate New Mexico's public policy").  She asserts it did not because it forced her to either purchase or reject both UM/UIM Bodily Injury (UM/UIM BI) coverage and UM/UIM Property Damage (UM/UIM PD) coverage, whereas she should have been permitted to purchase only UM/UIM BI coverage while rejecting the other.

Ms. Livingston insured a 2003 Ford, a 2001 Toyota, and a 2012 Chevrolet through Safeway. In relevant part, the UM/UIM Coverage Selection/Rejection Form provided by Safeway to Ms. Livingston stated as follows:

> Based on your Bodily Injury Limit of: $25,000/50,000, the available UM/UIM Coverage option(s) for this policy are $25,000/50,000 (per person/per occurance [sic]) with a total premium cost of $130.00, or $0.71 per day, per vehicle.
>
> Based on your Property Damage Limit of: $10,000, the available UM/UIM PD Coverage option(s) for this policy are $10,000 ($250 Deductible) with a total premium cost of $75.00, or $0.41 per day, per vehicle.
>
> An "X" indicates your current UM/UIM and UM/UIM PD Coverage selection(s)
>
> |  | 03 Ford | 01 Toyota | 12 Chevrolet |
> |---|---|---|---|
> | I wish to purchase UM/UIM Coverage in the amount of $25,000/50,000. | _____ | _____ | _____ |
> | I wish to purchase UM/UIM PD Coverage in the amount of $10,000. | _____ | _____ | _____ |
> | I wish to REJECT UM/UIM and UM/UIM PD Coverages ENTIRELY and understand that my policy will not contain these Coverages. | ____X____ | ____X____ | ____X____ |

(ECF No. 15-1 at p. 1.) Ms. Livingston initialed by hand above each "X" and signed the form at the bottom. (*Id.*) She contends she should have been allowed to reject UM/UIM PD coverage while being able to purchase UM/UIM BI coverage, but this form failed to allow such selection. Because New Mexico law requires a rejection of UM/UIM coverage to be in writing (*Jordan*, 2010-NMSC-051, ¶ 22), it was impossible for Ms. Livingston to check/initial that she wanted to purchase UM/UIM BI coverage while also

checking/initialing that she was rejecting UM/UIM PD coverage on this form. She argues the form should have separated the rejection line into two options so she could purchase UM/UIM BI coverage while rejecting UM/UIM PD coverage. (*See* ECF No. 15 at pp. 4-5; ECF no. 18 at pp. 3-6; ECF no. 19 at pp. 3-4.) Nowhere does she allege that she ever tried to do this or even asked Safeway about the possibility of doing so.

**3.    Safeway contends it would violate NMSA 1978 § 66-5-301 to separate UM/UIM BI coverage from UM/UIM PD coverage.**

Safeway argues that not only did it comply with all requirements, but the law neither requires nor permits insurers to allow insureds to separate UM/UIM BI coverage from UM/UIM PD coverage. Relying on the express language of Section 66-5-301(A), Safeway says it must offer UM/UIM coverage "for bodily injury or death ***and*** for injury to or destruction of property." (*E.g.*, ECF No. 16 at p. 11 (quoting § 66-5-301(A)) (Safeway's emphasis).) Safeway inverts Ms. Livingston's argument by saying that splitting UM/UIM BI coverage from UM/UIM PD coverage "would not have made a 'meaningful offer' sufficient to permit a 'knowing and intelligent' decision to reject UM/UIM coverage in amounts required and authorized by the Statute." (ECF No. 21 at p. 8.)

**4.    Both parties failed to address important weaknesses in their own positions.**

Despite each party filing their own motion for summary judgment, a response opposing the other party's motion, and a reply, they ignored key problems in their own

arguments.  It would have been helpful to the Court if Ms. Livingston had addressed how her argument might satisfy the statutory language requiring UM/UIM coverage to be offered for both bodily injury <u>and</u> property damage.

Likewise, Safeway ignored the fact that Ms. Livingston does not take issue with the UM/UIM coverage **offer**; instead, she attacks how Safeway did not permit her to **purchase or accept** UM/UIM BI coverage while rejecting UM/UIM PD coverage. Safeway never bothered to address why it didn't or couldn't **sell** only UM/UIM BI coverage without UM/UIM PD coverage to Ms. Livingston, despite that its own form separates the two and provides different premium costs for each, which would suggest it was possible to sell one without the other.

### 5. <u>Nonetheless, Safeway's form satisfies the law's requirements and therefore allowed Ms. Livingston to knowingly and intelligently reject UM/UIM coverage.</u>

The New Mexico Supreme Court has laid out the steps an insurer must satisfy for a valid offer and rejection of UM/UIM coverage.  The insurer must:

(1) offer the insured UM/UIM coverage equal to his or her liability limits,
(2) inform the insured about premium costs corresponding to the available levels of coverage,
(3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and
(4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject[.]

*See Jordan*, 2010-NMSC-051, ¶ 22.

Here, Safeway simultaneously satisfied the first and second requirements by offering UM/UIM coverage to Ms. Livingston in the amounts equal to her liability coverage limits, which were the legal minimums.  Through Ms. Livingston's initials and signature on the Selection/Rejection Form demonstrating her intent to reject UM/UIM coverage, Safeway met the third requirement.  Finally, each of Safeway's Declaration Page/Renewal Certificates, sent to Ms. Livingston every six months at policy renewal time, noted the rejected UM/UIM coverage, which provided her an opportunity to reconsider the coverage rejection.  (*See* ECF Nos. 16-2, 16-3, 16-5, 16-6, 16-7.)  Thus, Safeway met the four requirements set forth in *Jordan*.

Safeway's UM/UIM Coverage Selection/Rejection Form offered Ms. Livingston the UM/UIM coverage required by law and appropriately permitted her to reject such coverage in writing.  The plain language of NMSA 1978 § 66-5-301(A) requires Safeway to provide both UM/UIM BI "**and**" UM/UIM PD coverage within the liability insurance policy unless such coverage is rejected by the insured.  And Ms. Livingston agrees Safeway offered such coverage to her.  (ECF No. 18 at p. 3.)

Additionally, the plain language of Subsection (C) gives an insured "the right to reject uninsured motorist coverage **as described in Subsections A and B** of this section[.]"  NMSA 1978 § 66-5-301(C) (emphasis added).  As noted, the UM/UIM coverage "as described in Subsections A and B" includes both UM/UIM BI coverage

"**and**" UM/UIM PD coverage.  Section 66-5-301 groups UM/UIM BI coverage and UM/UIM PD coverage together.  Ms. Livingston unambiguously rejected both types of UM/UIM coverage "ENTIRELY" and confirmed that her liability insurance policy "will not contain these Coverages."  (ECF No. 15-1 at p. 1.)  Accordingly, she did not pay for any UM/UIM coverage and she is not entitled to any UM/UIM benefits.  Ms. Livingston received exactly the coverage she "consciously [chose] to pay for."  *Jordan*, 2010-NMSC-051, ¶ 24.  And Safeway is not required to provide coverage "for which [it is] not compensated."  *Id.*

To be sure, Safeway's UM/UIM Coverage Selection/Rejection Form leaves something to be desired.  The act of separating the premiums for UM/UIM BI coverage from UM/UIM PD coverage may dissuade insureds from selecting UM/UIM coverage by making the cost appear exorbitant.  This does not further "the New Mexico courts' goal of expansive UM/UIM coverage."  *Jaramillo v. Gov't Employees Ins. Co.*, No. 10-1095 JCH/LFG, 2011 WL 13085936, at *6 (D.N.M. Sept. 14, 2011).  In the end, though, Safeway's form met the law's requirements "for a valid and meaningful rejection of UM/UIM coverage in amounts authorized by statute."  *Jordan*, 2010-NMSC-051, ¶ 20.  Safeway allowed Ms. Livingston to make a "knowing and intelligent" decision to reject UM/UIM coverage.  *See id.*  She did so, and is not now entitled to retroactive UM/UIM coverage.

## CONCLUSION AND ORDER

The material facts are undisputed and the Court concludes Safeway is entitled to judgment as a matter of law under F.R.C.P. 56.

**IT IS HEREBY ORDERED** that Defendant Safeway Insurance Company's motion for summary judgment (ECF No. 16) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Sadie Livingston's motion for summary judgment (ECF No. 15) is hereby **DENIED**.

**DATED** this 18th day of December, 2017

                                        Scott W. Skavdahl
                                        United States District Judge